U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP - 6 2013

CLERK, U.S. DISTRICT COURT
By _____
              Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ANGEL HENDERSON,                    §
                                    §
          Plaintiff,                §
                                    §
VS.                                 §    NO. 4:12-CV-498-A
                                    §
GRAND PRAIRIE INDEPENDENT           §
SCHOOL DISTRICT,                    §
                                    §
          Defendant.                §


MEMORANDUM OPINION
and
ORDER

     Before the court for consideration and decision is the

motion of defendant, Grand Prairie Independent School District,

for summary judgment seeking dismissal of the alleged causes of

action of plaintiff, Angel Henderson.  After having considered

such motion, plaintiff's response thereto, defendant's reply, the

pleadings, the entire record of this action, and pertinent legal

authorities, the court has concluded that such motion should be

granted.

I.

Background

A.   Plaintiff's Alleged Causes of Action

     Plaintiff initiated this action on July 19, 2012, with her

complaint alleging three causes of action--interference by

defendant with her rights under the Family Medical Leave Act, 29
U.S.C. §§ 2601, et. seq. ("FMLA"), FMLA retaliation by defendant,
and intentional infliction of emotional distress by defendant.
Defendant filed a motion to dismiss plaintiff's alleged cause of
action for intentional infliction of emotional distress, to which
plaintiff failed to respond.  That motion was granted by a
memorandum opinion and order issued October 9, 2012.  On July 16,
2013, plaintiff filed her amended complaint reasserting her
causes of action based on alleged FMLA interference and FMLA
retaliation.

B.   More Detailed Description of Plaintiff's Claims

In the meantime, on November 26, 2012, the parties filed
their joint status report in which each described the party's
contentions.  Plaintiff described her contentions as follows:

> Plaintiff was employed by Grand Prairie
> Independent School District ("GPISD") as a special
> education teacher.  On or about November 29, 2010,
> Plaintiff provided notice to GPISD of her need for FMLA
> leave.  Plaintiff's physician also certified her need
> for leave and continuous care based on [Plaintiff]'s
> serious medical condition.
>
> Only one day after her request for medical leave,
> GPISD immediately sought to conduct an investigation
> against Plaintiff to determine whether Plaintiff was
> operating a business from her classroom during school
> hours.  After concluding the investigation, GPISD tried
> to force Plaintiff to resign her employment to deter
> her from obtaining medical leave.  Additionally, GPISD
> also warned Plaintiff that it would seek to terminate
> her employment and fail to renew her contract if she

failed to provide a resignation.  Plaintiff refused to
resign.  As such, GPISD terminated Plaintiff's
employment and failed to renew her contract with the
District.

GPISD's articulated response for termination is
not legitimate.  The school failed to conduct a proper
investigation in this matter, failed to apply
progressive discipline, and failed to terminate or
discipline other similarly situated GPISD employees for
the same conduct used as a basis for Plaintiff's
termination.

Plaintiff is seeking actual damages, liquidates
[sic] damages, attorney's fees, and costs.

Joint Status Report at 2.

## II.

### Grounds of Defendant's Motion and Summary of Plaintiff's Response in Opposition to the Motion

A.   Grounds of the Motion

Generally stated, defendant moved for summary judgment on

the ground that it "is entitled to judgment as a matter of law as

Plaintiff cannot prove sufficient facts to create a genuine issue

of fact to support any liability by [defendant]."  Mot. at

unnumbered 2nd page, section III.  A more detailed statement is

found in the brief defendant filed in support of its motion.  As

to plaintiff's contention that defendant interfered with her

rights under the FMLA, defendant asserted that the summary

judgment record establishes as a matter of law that (1) plaintiff

requested and was granted twelve weeks of leave under the FMLA,

(2) plaintiff did not return to work after her qualified absence
under the FMLA, and (3) plaintiff was not constructively
discharged by defendant.  Defendant's more detailed response to
the retaliation claim was that (1) plaintiff cannot establish a
prima facie case of retaliation under the FMLA, (2) defendant had
several legitimate, non-retaliatory reasons to terminate
plaintiff's probationary contract, and (3) plaintiff cannot
establish that defendant's legitimate, non-retaliatory reasons
for her termination constituted pretext.

B.   Summary of Plaintiff's Response in Opposition

In her opposing brief, plaintiff summarized the factual and
legal bases of her opposition to the motion as follows:

> On July 19, 2012, Plaintiff filed the current
> lawsuit alleging causes of action for Family Medical
> Leave Act ("FMLA") interference and retaliation.
> Defendant's reasons for termination are not legitimate
> and are completely contradicted by the evidence on
> file.  It is undisputed that Plaintiff provided notice
> and was granted medical leave in this case.  Documented
> evidence demonstrates that only *one day* after
> Plaintiff's FMLA request, Defendant began a bogus
> investigation into Plaintiff's personal computer usage
> claiming Plaintiff had used Defendant's email and
> technology resources to operate her own personal
> business during school hours.  Defendant initially used
> this alleged "misconduct" as a basis to terminate
> Plaintiff's employment.

> In hopes of dismissing this case through summary
> judgment, Defendant has changed its original reason for
> termination and currently contends that Plaintiff was
> terminated due to poor performance.  Despite
> Defendant's allegations, Plaintiff did not receive a

4

single written warning concerning her performance
*before* her request for FMLA.   Rather, Defendant's
human resource department decided to begin documenting
Plaintiff's alleged performance issues *only after* she
requested and was granted leave.

Notwithstanding, the evidence on file clearly
shows that school officials tried to coerce Plaintiff
into resigning her employment *while* she was on medical
leave, threatened not to renew her contract at the end
of her leave if she failed to resign, and initially
terminated her employment *__before__* the conclusion of her
12 week leave period.   Once Defendant realized that it
had terminated Plaintiff's employment in violation of
the FMLA, it quickly attempted to return Plaintiff to
work three weeks after originally terminating her.
However, Defendant refused to place Plaintiff in her
former position because it had already been filled by
another employee.   [Plaintiff] ultimately resigned her
employment because she believed she had been
constructively discharged after she was falsely accused
of operating a business from her classroom, harassed by
her superiors, repeatedly asked to resign, repeatedly
told during her FMLA leave that the school district
would not renew her employment contract with GPISD if
she failed to resign, advised by letter that GPISD had
decided to terminate her employment before the
conclusion of her leave, informed that her former
position would be unavailable, and after being advised
that her contract would not be renewed with the
District.   Clearly, GPISD interfered with Plaintiff's
employment by failing to return her to an equivalent
position for which she was entitled and subsequently
retaliated against Plaintiff by terminating/failing to
renew her employment contract.   There are multiple fact
issues in this matter that preclude summary judgment.
Defendant's Motion for Summary Judgment should be
denied.

Br. in Opp'n at 3-4.

III.

## Analysis

A.   Pertinent Summary Judgment Standards

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986).  The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case.  Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . .").  If the evidence identified could not lead

a rational trier of fact to find in favor of the nonmoving party

as to each essential element of the nonmoving party's case, there

is no genuine dispute for trial and summary judgment is

appropriate.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587, 597 (1986).

The standard for granting a motion for summary judgment is

the same as the standard for rendering judgment as a matter of

law.  Celotex Corp., 477 U.S. at 323.  If the record taken as a

whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial.

Matsushita, 475 U.S. at 597; see also Boeing Co. v. Shipman, 411

F.2d 365, 374-75 (5th Cir. 1969) (en banc) (explaining the

standard to be applied in determining whether the court should

enter judgment on motions for directed verdict or for judgment

notwithstanding the verdict).

B.    Undisputed Facts Pertinent to Defendant's Motion

The existence of the following facts have been established

by the summary judgment record without genuine dispute:

Plaintiff was an employee of defendant during the 2010-2011

school year under a ten-month term probationary contract that was

to expire on June 4, 2011.  She was employed as the Lead Teacher

to a Structured Learning Classroom ("SLC") at defendant's Arnold

Middle School ("Arnold").  The SLC classroom is for students with

severe disabilities, such as autism spectrum disorders or other
neurological impairments that require a highly structured
educational setting that would not exist in another special
education or general education classroom.  Each student in the
SLC classroom has an individualized education program ("IEP")
containing, <u>inter alia</u>, the student's goals and objectives, as
required by the Individuals With Disabilities Education Act[1]
("IDEA").  An SLC teacher is responsible to help ensure that her
students' IEPs are implemented.  A teacher's failure to properly
implement a student's IEP can create liability on the part of
defendant for failure to provide its students a free, appropriate
public education in accordance with their respective IEPs, as
required by IDEA.

Early in the 2010-2011 school year, personnel of defendant,
Beth Cummings, defendant's Coordinator of Assessment & Related
Services, and Amanda Forman, one of defendant's Autism
Facilitators, developed concerns over plaintiff's performance as
an SLC teacher.  They met with the principal of Arnold, Ruth
White, and Arnold's assistant principal, Troy Roberts, on
November 15, 2010, for a discussion of their concerns, which
included (1) conflicts between plaintiff and her

---

[1]20 U.S.C. § 1414(d).

paraprofessionals; (2) plaintiff arriving late at school and leaving early; (3) time spent by plaintiff out of the classroom, in the office, or on the telephone; (4) plaintiff's lack of (a) planning and implementation of instruction in the classroom, (b) instructional materials to effectively differentiate instruction for her students, (c) completion of logs and documentation, and (d) any documentation on restraint used in her classroom; and (5) a suspicion that plaintiff was working on another job during the time when she should have been performing her duties for defendant.

After the November 15, 2010 meeting, arrangements were made for Ms. Forman, Ms. White, and Mr. Roberts to meet with plaintiff and her paraprofessionals.  Plaintiff failed to attend that meeting, but the paraprofessionals assigned to plaintiff's class did attend; and they expressed concerns that plaintiff was not properly performing her duties as an SLC class teacher, and they complained that plaintiff was frequently out of the classroom when she should have been there performing her duties, often leaving the school earlier than she should.

On November 17, 2010, Ms. Cummings and Ms. Forman observed plaintiff's classroom in order to complete a checklist, as was being done in all of defendant's SLC classes, to see if certain strategies were being implemented.  The checklist, based on

9

observations of plaintiff's classroom, reflected poorly on
plaintiff's classroom performance.  There was a lack of guidance
to plaintiff's paraprofessionals; no lesson plans; no
organization for the communication logs; a lack of knowledge on
plaintiff's part regarding the communication logs, including
completion of logs; and a failure to complete the logs.  Also
noted on the checklist was a complete lack of classroom
management, behavioral strategies, independent work stations
related to each student's IEP, social skills training for
plaintiff's students, and required record keeping.

On November 19, 2010, Ms. White contacted defendant's
Executive Director of Secondary and Professional Support
Personnel, Norm Whitaker, about the concerns Ms. White and the
other responsible personnel of defendant had developed about
plaintiff's performance.  She informed Mr. Whitaker that
plaintiff was not doing anything in the classroom, but was having
the paraprofessionals perform all SLC classroom duties; that all
required special education documentation and paperwork was not
being completed in a timely manner; that plaintiff was leaving
work early, leaving the paraprofessionals in charge of the
classroom; that plaintiff was failing to call the substitute
system during her numerous absences; and that there was a

suspicion that plaintiff was operating a business out of her classroom.

As it turned out, November 19 also was the last day that plaintiff reported to work for defendant.  During plaintiff's absences from work in the latter part of November 2010, plaintiff failed to properly report her absences, with the result that her students were alone with two substitute paraprofessionals.

On November 30, 2010, Ms. Cummings and Ms. Forman documented to defendant's Human Resources Department the following concerns relative to plaintiff's performance as an SLC teacher:

a.   [Plaintiff] was afforded numerous training opportunities and support from the staff to help implement appropriate differentiated instruction to her students, but she showed limited follow through on the strategies and suggestions that were provided to her.  Moreover, on every walkthrough and observation, there was no observable evidence of any individual planning to meet the student's individual goals and objectives;

b.   [Plaintiff] requested that paraprofessional [sic] complete logs and communications sent home to parents despite being instructed by Ms. Cummings and Ms. Forman that it was her responsibility to complete the logs and communicate with parents;

c.   [Plaintiff] did not have a functional communication system in place for her students despite being provided support to complete these systems;

d.   [Plaintiff] did not utilize individual visual schedules for her students;

11

    e.    [Plaintiff] did not provide any instruction to her
          students after her paraprofessionals were placed
          on leave due to injuries they sustained in the
          classroom;

    f.    [Plaintiff] failed to document any student
          restraints performed in the classroom despite
          specific legal requirements for documenting the
          use of restraint;

    g.    [Plaintiff] failed to send her students' progress
          reports home in a timely manner; and

    h.    [Plaintiff] did not explore or take advantage of
          opportunities to include her students with
          nondisabled peers to the maximum extent possible
          (i.e., through physical education, lunch,
          breakfast, and electives).

Mot., App. at 22.

     On December 1, 2010, Lyle Dubus, defendant's Executive

Director of Instructional Technology, confirmed from a check of

plaintiff's computer that there was evidence that plaintiff was

operating a business out of her classroom during work hours.   The

name of the business plaintiff owned and operated was ACCESS

Adult Day Activity and Resources Center.

     On the same date on which the concerns of defendant's

employees were conveyed to its Human Resources Department,

November 30, 2010, plaintiff requested of defendant's Supervisor

of Personnel Records/Leaves that defendant fax FMLA paperwork to

plaintiff's doctor's office, informing the supervisor of that

Department that the doctor had instructed plaintiff to request

                                  12

the paperwork.  On December 1, 2010, the supervisor provided
plaintiff with the material plaintiff requested.  Plaintiff was
informed that she was eligible for FMLA leave, and was placed on
leave as of November 30, 2010.  Plaintiff was allowed to take at
least twelve weeks of medical leave during the 2010-2011 school
year.  She was never denied any request for medical leave.

Based on the information that the district had by early
December 2010, Nancy Bridges, defendant's Executive Director of
Human Resources, made the decision to place plaintiff on
administrative leave with pay effective December 2, 2010.  As of
that time, responsible personnel of defendant had information
suggesting to them that plaintiff's job performance was
unacceptable and was impacting her students' education, but they
were continuing to pursue the investigation as to whether
plaintiff was running a business out of her classroom during
school hours.

When the decision was made to place plaintiff on
administrative leave with pay, Mr. Whitaker and Calvin Harrison,
defendant's Executive Director of Elementary Personnel, met with
plaintiff to inform her of the allegations regarding her business
activities.  At that time, Mr. Harrison was not aware that
plaintiff had requested FMLA leave.  Plaintiff was hostile during
the meeting and she refused to answer the direct questions asked

of her.  Ms. Bridges replaced Mr. Harrison in the meeting and
provided plaintiff with the memorandum regarding her
administrative leave.  Plaintiff refused to sign the memorandum.
Ms. Bridges was not aware at that time that plaintiff had
requested FMLA leave.

On December 6, 2010, Mr. Whitaker learned that the school
nurse at Arnold was listed as a consulting nurse for the business
plaintiff was conducting during her school hours.  The school
nurse confirmed with defendant's personnel that she was serving
as a consulting nurse for plaintiff's business out of school
hours.  Defendant's personnel were satisfied that the functions
the school nurse performed for plaintiff's business were not
having an adverse effect on the performance of her job as a
school nurse.

On December 6, 2010, Ms. Bridges directed plaintiff to meet
with her and Mr. Whitaker later that day, but plaintiff failed to
attend the meeting.  Ms. Bridges then directed plaintiff to meet
with Ms. Bridges and Mr. Whitaker in the Human Resources offices
the next day, December 7, 2010.  Again, plaintiff failed to
attend.

On December 7, 2010, Ms. Bridges informed plaintiff by
correspondence that defendant's investigation concerning her
outside business activities had been completed and that defendant

14

had determined that plaintiff was operating a business out of her classroom.  That same day, a second letter was sent to plaintiff in which there was a listing of her numerous acts of insubordination to human resources personnel during the course of the investigation.

The decision was made by defendant's Board of Trustees on March 3, 2011, that defendant's best interests would be served by terminating plaintiff's probationary contract at the end of the contract term.  The recommendation to the Board to terminate the probationary contract was made by Superintendent Susan J. Simpson Hull.  It was made because of information Dr. Simpson Hull had concerning plaintiff's performance in the SLC classroom.  When Dr. Simpson Hull made that recommendation, she was unaware that plaintiff was on FMLA leave, nor was that information communicated to the Board of Trustees.  In addition to informing the Board of Trustees of plaintiff's poor performance in the SLC classroom, Dr. Simpson Hull informed the Board of plaintiff's insubordination in connection with the investigation into whether she was operating a business during school hours.  The Board made the decision to terminate plaintiff's probationary contract based on Dr. Simpson Hull's recommendation.  The Board was defendant's final decision maker, and the only decision maker that had the authority to terminate plaintiff's probationary contract.  The

15

termination decision was effective June 4, 2011, the end of the term of plaintiff's probationary contract.

On March 3, 2011, defendant sent plaintiff correspondence informing her of the Board's decision.  A clarification letter was sent by Ms. Bridges to plaintiff on March 23, 2011, making clear to plaintiff that her probationary contract was terminated at the end of the contract term, not during the term, with the result that plaintiff was still employed by defendant through June 4, 2011.  Plaintiff was requested to inform Ms. Bridges when plaintiff was released to return to duty so that defendant could return plaintiff to work as soon as possible.  However, plaintiff never returned to work.  Nor did she ever submit a written resignation.

C.   The Summary Judgment Record Does Not Support Plaintiff's Alleged Causes of Action

1.   The Interference Claim

The court accepts for summary judgment purposes the apparently undisputed facts that plaintiff is an eligible employee under the FMLA, that defendant is an employer as defined by the FMLA, and that plaintiff gave notice of her intent to take leave contemplated by FMLA.  Thus, the crucial issues as to the interference claim are whether there is summary judgment evidence that defendant interfered with, restrained, or denied plaintiff's

16

exercise of FMLA rights and, if so, whether there is summary judgment evidence that she was prejudiced by such an interference.  See Brock-Chapman v. Nat'l Care Network, LLC, No. 3:10-CV-054-B, 2013 WL 169177, at *4 (N.D. Tex. Jan. 16, 2013).

The summary judgment record establishes without dispute that defendant allowed plaintiff to take, and that she took, the leave contemplated by FMLA to the full extent the law required.  As previously noted, the evidence is that she took at least twelve weeks of medical leave during the 2010-2011 school year and that she was never denied any request for medical leave.

Plaintiff's contentions of interference relate to conduct on the part of personnel of defendant that happened to occur in part at the same time when plaintiff decided to take FMLA leave and during a part of plaintiff's FMLA leave.  However, plaintiff has not adduced summary judgment evidence that the conduct of which she complains was not legitimately taken and unrelated to her FMLA leave or that any of that conduct prejudiced her FMLA rights.  The summary judgment record makes clear that defendant, through its personnel, had concerns about plaintiff's work performance before she requested FMLA leave, and that activities of defendant's personnel related to plaintiff's performance while she was on FMLA leave were but part of an ongoing inquiry that was prompted by defendant's concerns relative to plaintiff's work

performance.  Plaintiff's contention that there was a connection
between the activities of defendant's personnel and her exercise
of FMLA rights is speculation without any support in the summary
judgment record.

Plaintiff's assertion that while she was on medical leave
personnel of defendant tried to persuade her to resign her
employment, with the threat not to renew her contract at the end
of her leave if she failed to resign, points to what could be
viewed as evidence that, because of plaintiff's work performance,
defendant would have preferred that she not continue in her
employment with defendant, but plaintiff has provided no evidence
that her FMLA rights were prejudiced by any such activity.

Nor is there any summary judgment evidence that would
support a finding that plaintiff was constructively discharged by
defendant.  The summary judgment evidence establishes without
dispute that plaintiff did not return to work after November 19,
2010.  Although the FMLA provides a right to reinstatement to an
employee on FMLA leave, "[i]f an employee fails to return to work
on or before the date that FMLA leave expires, the right to
reinstatement also expires."  See Hunt V. Rapides Healthcare
Sys., LLC, 277 F.3d 757, 763 (5th Cir. 2001).  Inasmuch as
plaintiff never returned to work, her statutory right to
reinstatement expired.  The summary judgment record establishes

that plaintiff never provided defendant an opportunity to
reinstate her to the position she had before she started her FMLA
leave or to any other position.

Plaintiff attaches significance to the fact that after
sending her a letter on March 3, 2011, informing her that
defendant's Board of Trustees had decided to terminate her
probationary contract, defendant sent her another letter on
March 23, 2011, clarifying that the vote of the Board to
terminate her probationary contract was a vote to terminate the
contract at the end of the contract term, not immediately, with
the consequence that, from defendant's standpoint, plaintiff
"still [had] a contract of employment with this District until
June 4, 2011." Mot., App. at 93. That same letter informed
plaintiff that if she were to be released to return to duty, she
was to contact Ms. Bridges, the Senior Executive Director of
Human Resources, "immediately so that we may arrange to return
you to work as soon as possible." Id. There is nothing in the
summary judgment record that would indicate that the March 3
letter was intended to convey that the termination was to be
effective immediately, nor is there anything in the record
suggesting that the March 23 clarification letter was not
genuinely a clarification of the message conveyed by the March 3
letter.

No rational fact finder could find from the evidence presented in the summary judgment record that defendant interfered with any right plaintiff had under the FMLA, much less that anything done by defendant's personnel that plaintiff contends constituted interference prejudiced her rights in any respect. <u>See Ragsdale v. Wolverine World Wide, Inc.</u>, 535 U.S. 81, 89 (2002).

Therefore, the court has concluded that summary judgment should be granted as to plaintiff's alleged cause of action for interference with her rights under the FMLA.

    2.   <u>The Retaliation Claim</u>

Because there is no significant difference between retaliation claims under the FMLA and similar claims under other anti-discrimination laws, the <u>McDonnell Douglas</u>[2] framework is applicable to an analysis of a retaliation claim under the FMLA. <u>Hunt</u>, 277 F3d. at 768. For plaintiff to prevail on a claim of FMLA retaliation, she must first establish a <u>prima facie</u> case of retaliation. If she does so, the burden shifts to defendant to articulate a legitimate, non-retaliatory reason for the alleged adverse employment action. If defendant meets its burden to articulate a legitimate, non-retaliatory reason, the burden

---

[2]<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

shifts to plaintiff, in the summary judgment context, to adduce summary judgment evidence that the articulated reason was a pretext for retaliation.

A prima facie case of retaliation under the FMLA is established only if the plaintiff shows that (1) she was protected under the FMLA, (2) she suffered an adverse employment decision, and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA or (3b) the adverse decision was made because she took FMLA leave. Id. The court has concluded that there is no summary judgment evidence that would support a finding of either of the third element options--there is no summary judgment evidence that she was treated less favorably than an employee who had not requested leave under the FMLA, nor is there any summary judgment evidence that defendant's decision to terminate her probationary contract was made because she took FMLA leave.

As to the latter alternative, the summary judgment record affirmatively establishes the lack of a causal connection because the record shows without dispute that Dr. Simpson Hull, the Superintendent of defendant who recommended to defendant's Board of Trustees plaintiff's probationary contract be terminated, had no knowledge at the time she made the recommendation that plaintiff had requested FMLA leave, and the record establishes

21

that the Board of Trustees, when it accepted and acted upon Dr.
Simpson Hull's recommendation, did not have information regarding
plaintiff's FMLA leave.  In other words, the ultimate decision
makers, who decided to terminate plaintiff's probationary
contract, could not have taken into account in making that
decision anything about plaintiff's FMLA leave because they knew
nothing of it.  Any contention by plaintiff that they are bound
to have had knowledge of plaintiff's FMLA leave is speculation
that is without any support in the summary judgment record.

As to the alternative third element that plaintiff was
treated less favorably than an employee who had not requested
leave under the FMLA, there is no summary judgment evidence that
any similarly situated employee of defendant who had not
requested leave under the FMLA was treated more favorably than
plaintiff.  The court does not take plaintiff's response in
opposition as seriously asserting that the alternative third
element applies.  She makes no mention of such a contention in
her summary of her response in opposition to the motion.  See
supra at 4-5.  To whatever extent plaintiff might be contending
that the school nurse who was employed by plaintiff in
plaintiff's private business was a similarly situated employee
whose employment by defendant was not terminated, plaintiff would
be incorrect because there is no suggestion in the summary

judgment record that there is any similarity between the facts
defendant would consider in determining whether to continue
plaintiff's employment as an SLC teacher at Arnold, on the one
hand, and the facts defendant would consider in determining
whether the school nurse should be allowed to continue her
employment as a school nurse at Arnold, on the other.

Furthermore, even if plaintiff had adduced summary judgment
evidence of facts that would create a prima facie case of
retaliation, the summary judgment record establishes with clarity
that defendant articulated a legitimate, non-retaliatory reason
for defendant's decision not to renew plaintiff's 2010-2011
probationary contract effective upon its expiration in June 2011.
Defendant's decision makers were faced with knowledge of
performance concerns that personnel of defendant had developed
through inquiry, investigation, and observation over a period of
months before the decision was made in March 2011 to terminate
plaintiff's probationary contract at the end of its term.  The
record reflects that the termination decision was based on
concerns relative to plaintiff's performance as an SLC teacher
(including the perception of the decision makers that she was
operating her private business from her SLC classroom during
school hours), as well as plaintiff's insubordination when
questioned relative to performance issues.  Plaintiff has adduced

no summary judgment evidence raising an issue that defendant's articulated reasons for terminating plaintiff's contract were pretext for retaliation.

Therefore, the court has concluded that summary judgment should be granted as to plaintiff's alleged cause of action for FMLA retaliation.

IV.

Order

For the reasons given above,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted and that plaintiff's alleged causes of action against defendant be, and are hereby, dismissed.

SIGNED September 6, 2013.

_____
JOHN McBRYDE
United States District Judge